GILLIE v GENESEE COUNTY TREASURER

Docket No. 275268. Submitted December 4, 2007, at Lansing. Decided December 11, 2007, at 9:05 a.m.

David Gillie brought an action in the Genesee Circuit Court against the Genesee County Treasurer (hereafter the county), Gene L. White, and Barry D. and Karel J. Floyd, seeking to quiet title to real property located in the city of Flint purchased by the plaintiff from the county at an auction on October 26, 2004, following a February 9, 2004, judgment of foreclosure for unpaid 2001 property taxes. The property had been owned by the Floyds and had been conveyed to White in a warranty deed dated July 1, 1992. The deed, however, had not been recorded until February 14, 2005. The county did not deliver a deed to the plaintiff within 30 days of the auction sale and purchase. The county, in December 2004, canceled the sale on the basis that an administrative error (the alleged failure to notify White of the foreclosure proceedings) had occurred and attempted to return to the plaintiff the money paid at the auction, but the plaintiff refused to accept the money. In February 2005, White paid the amount necessary to redeem the parcel, recorded the 1992 deed, and the county filed and recorded a cancellation of notice of judgment of foreclosure. The plaintiff filed an amended complaint, seeking to quiet title to the property, adding a claim for breach of contract, for which damages were sought, arising out of the county's refusal to convey the property to the plaintiff pursuant to the sale at auction. The plaintiff added a claim for specific performance, seeking an order requiring the defendants to convey any interest in the property to the plaintiff. The Floyds waived any claims to the property and were dismissed from the action. The parties filed motions for summary disposition, and the court, Joseph Farah, J., ruled that the county was not required by MCL 211.78m(2) to convey a deed to the plaintiff under the circumstances, ordered the county to return the amount paid by the plaintiff, plus interest, and pay the plaintiff's filing fee, and dismissed the action against the county. A stipulation and order to dismiss the action against White, without prejudice, was then entered. The plaintiff appealed.

The Court of Appeals *held*:

1. MCL 211.78m(2) permits the county to adopt a procedure that allows cancellation of a tax sale, but the procedure may not permit cancellation beyond the 30-day period following the sale during which the statute requires that a deed must be issued. The county cannot rely on the cancellation provision of the statute to cancel the sale beyond that 30-day period pursuant to its procedure that reserved the right to cancel any sale at any time.

2. Section 78m(2) indicates that a deed is rendered meaningless, nugatory, or unenforceable if the county discovers a statutory defect in the foreclosure proceedings; fee simple title would not vest because the deed would be invalid. Therefore, if White was deprived of constitutionally adequate notice, any deed that the plaintiff might have been entitled to receive would not have vested title in the plaintiff. A "defect" for such purposes does not include a failure to comply with the statutory notice requirements unless the failure was sufficiently significant that due process was offended.

3. The provisions of MCL 211.78k(9) that allow the county to cancel the foreclosure if the property has not yet been transferred under MCL 211.78m to a person such as the plaintiff does not provide the county the authority to cancel the sale beyond the 30-day period provided in § 78m(2). The county may not delay issuance of the deed beyond the 30-day deadline and then under § 78k(9) cancel the sale because no deed had yet been issued.

4. If White was deprived of constitutionally adequate notice, title to the property belongs to him and the plaintiff would have no basis for relief. If White was neither deprived of constitutionally adequate notice nor deprived of statutory notice under MCL 211.78i(2) to (5), the plaintiff would be entitled to ownership and White's interest would be extinguished and he would have no damages or title remedy. If White was not deprived of constitutionally adequate notice, but there was a failure to comply with the notice requirements of § 78i(2) to (5), the plaintiff would be entitled to a deed and ownership, and White would have a cause of action against the county for damages pursuant to MCL 211.78l(1). The matter must be remanded for further proceedings with regard to the issue of notice.

Reversed and remanded.

1. TAXATION — FORECLOSURES — CANCELLATION OF SALE AT AUCTION.

A foreclosing governmental unit may adopt a procedure to allow the unit to cancel the sale at auction of real property where the deed to the property has not been issued to the buyer; the procedure may not permit such cancellation beyond the 30-day period follow-

ing the sale during which the unit is required to issue a deed to the buyer (MCL 211.78k[9], 211.78m[2]).

2. TAXATION — FORECLOSURES — DEFECTS IN PROCEEDINGS.

A deed to real property purchased from a foreclosing governmental unit at an auction is invalid and unenforceable if the unit discovers a statutory defect in the foreclosure proceedings; a "defect" for such purposes does not include a failure to comply with the statutory notice requirements unless the failure is sufficiently significant that due process was offended (MCL 211.78m[2]).

*Robert H. Bancroft, Attorney at Law, P.C.* (by *Robert H. Bancroft*), for the plaintiff.

*Peter Goodstein* for the Genesee County Treasurer.

Before: DAVIS, P.J., and MURPHY and SERVITTO, JJ.

MURPHY, J. Plaintiff David Gillie appeals as of right the trial court's order granting summary disposition in favor of defendant Genesee County Treasurer (the county) in this action arising out of a tax sale of property for delinquent 2001 property taxes and involving a dispute with respect to the ownership of the property. This case entails interpretation of the General Property Tax Act (GPTA), MCL 211.1 *et seq.* We vacate the judgment and order and remand for further proceedings on the issue of notice.

### I. BASIC FACTS AND PROCEDURAL HISTORY

At issue in this dispute is real property located on Fenton Road in the city of Flint, county of Genesee, having a tax parcel number of 40-24-428-039 and being legally described as lot 37 of the Earns Wideman Plat (hereinafter the property). A warranty deed dated July 1, 1992, reflects that the property had been owned by defendants Barry D. and Karel J. Floyd and that they

conveyed the property to defendant Gene L. White. White, however, did not record the deed until February 14, 2005.

The county asserts on appeal and also asserted below: White was a Flint resident for 45 years; in 1998 he moved to Arkansas; at the time of his move, he notified the city of Flint to send his tax bills to his Arkansas address; the city complied and sent White's tax bills to his new Arkansas address for a time, but the city, without the direction or consent of White, subsequently and inexplicably changed his address in its tax records back to his old Flint address, although White still remained in Arkansas; and the 2001 tax bills were erroneously sent to White's Flint address and not the Arkansas address.[1] As noted by plaintiff, these assertions are not supported by documentary evidence in the record, although plaintiff makes no express claim that they are untrue.[2]

In May 2003, the county filed a petition for foreclosure on the basis that the property had been forfeited to the county for failure to pay $1,292 in property taxes for 2001. In the tax foreclosure proceedings, a show-cause hearing relative to the delinquent taxes and forfeiture was scheduled for January 29 and 30, 2004, and, in addition, a judicial foreclosure hearing was scheduled for February 9, 2004. The information concerning the hearings was contained in a single notice. According to an affidavit executed by a representative of Title Check, LLC, a company that contracted with the county to

---

[1] We note that White's Flint mailing address had not been the address where the property is located. The record suggests that the property is a rental unit.

[2] At one of the court hearings, plaintiff's counsel stated that White had been deposed, and the court file contains a notice of deposition in regard to White; however, a transcript of the deposition was never filed with the court.

provide various tax lien foreclosure services, including the serving of notices for show-cause and judicial foreclosure hearings, the notice for the January and February hearings was sent to White's old Flint address by certified mail, return receipt requested, in December 2003. Title Check records attached to the affidavit state, "attempted not known—1/14/04," with regard to the property at issue, which suggests that service of the notice by certified mail had not been successful. A second affidavit by the same representative indicates that personal service of foreclosure notices is also attempted by Title Check as part of its work for the county, and a company record attached to the affidavit reflects that the attempt at personal service in this case resulted only in a posting of the notice at the property. The attachment regarding the personal visit and attempt at service shows a date of December 1, 2003. There is no indication that the notice was personally handed to any person. An affidavit of publication further shows that the notice was published in *The Flint Journal* three times in January 2004.

On February 9, 2004, a final judgment of foreclosure was entered in the circuit court. Evidently, there had been no intervention by White or anyone through that date to acknowledge, challenge, or pay the tax delinquency. The judgment indicates that the county had filed proof of service, proof of publication, and proof of a personal visit in regard to the notice concerning the show-cause and foreclosure hearings. The judgment, which clearly contains some boilerplate language as required by the relevant statutes, states that all parties interested in the forfeited properties were heard[3] and that all interested parties entitled to notice and an

---

[3] There is no indication in the record that White was heard or even attended the foreclosure hearings.

opportunity to be heard were afforded such rights. The judgment also provides that title will vest absolutely in the county, without further rights of redemption, "if all forfeited delinquent taxes, interest, penalties and fees foreclosed against the parcel, plus any additional interest required by statute, are not paid to the County Treasurer on or before March 31, 2004." Furthermore, the judgment provides that all existing recorded and unrecorded interests in the property, subject to some exceptions not at issue here, are extinguished absent payment in full on or before March 31, 2004. Finally, the judgment indicates that it is a final order with respect to the property and, except as provided in MCL 211.78k(7), shall not be modified, stayed, or held invalid after March 31, 2004, "unless there is a contested case concerning a parcel in which event this final judgment, with respect to the parcel involved in the contested case, shall not be modified, stayed, or held invalid 21 days after the entry of the judgment in the contested case." There was no contested case with regard to the property and the tax delinquency.

No action was taken relative to the property by March 31, 2004. On October 26, 2004, as a result of the foreclosure judgment and the lack of any action in the interim, the property was put up for sale at auction by the county. Plaintiff submitted the high bid of $12,120, paying $1,500 in cash and tendering a check for the remaining $10,620. Plaintiff's receipt for the auction purchase of the property indicates that a deed would be recorded and forwarded to the purchaser within 30 days and that the sale was subject to the terms and conditions contained in various auction-related documents produced by the county. One of these documents, entitled "October 2004 Rules and Regulations, Genesee County Auction," provides that the county treasurer "reserves the right to cancel any sale at any time."

A deed to the property was not forwarded or delivered to plaintiff within 30 days of the auction sale and purchase. Pursuant to a letter dated December 15, 2004, from the county to plaintiff, the county canceled the sale and indicated that no deed would be forthcoming. The letter states that the county was canceling the sale because of an administrative error and that the property should never have been offered for public bidding. Enclosed was a refund of the $12,120 paid at auction by plaintiff.

A redemption certificate indicates that White subsequently paid $2,114 to the county on February 10, 2005, to cover the "total amount of delinquent taxes, penalties, interest and fees necessary to redeem the parcel." As indicated above, White finally recorded the 1992 deed from the Floyds on February 14, 2005. On February 23, 2005, the county filed and recorded a cancellation of notice of judgment of foreclosure, citing clerical error.

On March 8, 2005, plaintiff filed the instant action. The complaint, pursuant to MCL 600.2932 and MCR 3.411, sought to quiet title to the property, alleging that plaintiff was the rightful owner, that all other interests were extinguished by the tax sale at auction, and that plaintiff had superior title. Plaintiff demanded that the county issue him a quitclaim deed for the property. Plaintiff named the county, the Floyds, and White as defendants. White answered and filed affirmative defenses, maintaining that his Arkansas address had been well known to the city and county and that he was not afforded notice of the tax delinquency and foreclosure proceedings. On October 13, 2005, White filed a motion for summary disposition, arguing that the county properly canceled the sale of the property to plaintiff. A December 7, 2005, order reflects that the trial court

denied the motion because too many factual and legal issues existed. We have no record of a hearing on the motion.

On February 27, 2006, the county filed a motion for summary disposition, arguing that the quiet-title action against it must be dismissed because it was undisputed that the county no longer held any interest in the property. On March 22, 2006, plaintiff filed his own motion for summary disposition, contending that upon completion of the auction sale, fee simple title vested in plaintiff. At the hearing on the motions held April 10, 2006, the trial court first noted that the county did not have anything to give plaintiff, considering that it had already conveyed the property back to White; it was plaintiff and White who had the competing title claims as far as quieting title. The court decided to allow plaintiff an opportunity to file an amended complaint to seek money damages against the county for any claimed wrongful withholding of title or wrongful conveyance of title to White. The court held in abeyance any ruling on the quiet-title dispute as between plaintiff and White and whether the county rightfully canceled the sale. The order that was subsequently entered on the motions for summary disposition reflects that both motions were denied, and plaintiff was given 21 days to file an amended complaint.

On May 25, 2006, plaintiff filed an amended complaint, leaving intact the claim seeking to quiet title to the property and adding a claim of breach of contract, for which damages were sought, arising out of the county's refusal to convey the property to plaintiff pursuant to the sale at auction. Plaintiff also added a claim of specific performance, seeking an order requiring defendants to convey any interest in the property to plaintiff. On July 27, 2006, a stipulation and order was

entered pursuant to which the Floyds waived any and all claims to the property and agreed that they no longer held any interest in the property. The Floyds were effectively dismissed from the action.

On August 21, 2006, the county filed a new motion for summary disposition under MCR 2.116(C)(8), arguing that MCL 211.78m(2) gave it authority to cancel the sale and refuse to issue a deed to plaintiff; therefore, all of plaintiff's claims failed as a matter of law. On September 18, 2006, plaintiff responded to the county's motion for summary disposition and filed his own motion for partial summary disposition. Plaintiff argued that MCL 211.78m(2) did not allow the county to cancel the sale more than 30 days after the sale, and it was 50 days after the sale when the county first indicated that the sale was canceled and that no deed would be forthcoming. Plaintiff maintained that he acquired fee simple title when the sale and purchase at the auction were completed. Plaintiff contended that he was entitled to summary disposition against the county on the claims of breach of contract and specific performance. At this point, we note that White never filed a counterclaim to quiet title against plaintiff, never filed any claims against the county, did not join in the county's motions for summary disposition in any filings, and has not appeared in this appeal. White's counsel did indicate orally at the hearing on the summary disposition motions that he endorsed the county's position.

At the hearing on the cross-motions for summary disposition, the parties and the court spent a great deal of time addressing the proper interpretation of MCL 211.78m(2) and whether the county had the right to implement procedures that allowed for cancellation of a sale at any time after the sale, whether the county could

only cancel before the sale was complete and payment tendered, or whether cancellation could only be accomplished within a 30-day period following the auction.[4] The discussion then turned to the issue of notice, with the court indicating that both the county and White claimed that White did not receive the notice required by statute and necessary to comply with due process. Plaintiff contended that a hearing may be needed on the matter, that White had been deposed, so the court may wish to examine the transcript, which had not been submitted, and that the service by posting and publication may have been sufficient, considering that White did have a tenant living at the address. The trial court then ruled that, regardless of whether White had been

---

[4] MCL 211.78m(2) provides, in pertinent part:

Except as provided in subsection (5), property shall be sold to the person bidding the highest amount above the minimum bid. The foreclosing governmental unit may sell parcels individually or may offer 2 or more parcels for sale as a group. The minimum bid for a group of parcels shall equal the sum of the minimum bid for each parcel included in the group. The foreclosing governmental unit may adopt procedures governing the conduct of the sale and may cancel the sale prior to the issuance of a deed under this subsection if authorized under the procedures. The foreclosing governmental unit may require full payment by cash, certified check, or money order at the close of each day's bidding. Not more than 30 days after the date of a sale under this subsection, the foreclosing governmental unit shall convey the property by deed to the person bidding the highest amount above the minimum bid. The deed shall vest fee simple title to the property in the person bidding the highest amount above the minimum bid, unless the foreclosing governmental unit discovers a defect in the foreclosure of the property under sections 78 to 78*l*.

We note that MCL 211.78m was amended by 2006 PA 498, effective December 29, 2006, but there was no change in § 78m(2) and the auction and cancellation took place, respectively, in October and December 2004. MCL 211.78m was also amended by 2003 PA 263, effective January 5, 2004, which amendment crafted the language quoted above, and which language was in effect during the relevant period.

given sufficient notice, the county had the ability to strike a deal with White and to cancel the sale. The court determined that MCL 211.78m(2) allowed the county "not to convey a deed within 30 days when they believe the circumstances are such that the property owner's interests should be protected to a degree greater than that protection afforded the person who buys the property for the taxes." The trial court further found that the county was entitled to invalidate the sale under its procedures, as long as the county returned all the money paid in good faith by the purchaser at the tax sale. The court did not read MCL 211.78m(2) as requiring the county to issue a deed to plaintiff within 30 days of the sale regardless of the situation. The trial court concluded:

> The provision [in MCL 211.78m(2)] that says the foreclosing governmental unit may adopt procedures governing the conduct of the sale and may cancel the sale prior to the issuance of a deed and the language could have said so long as done within 30 days but instead says under this subsection if authorized under the procedures. If you trace the word procedures in that statute, it is immediately traceable to the sentence above which says the foreclosing governmental unit may adopt procedures. The procedures adopted by the county are somewhat broad, ["]we may cancel a sale at any time.["] Those are the procedures that they have adopted, those are the procedures the statute allows them to follow. As a result, the county's motion for summary disposition is granted in all forms concerning the theories of breach of contract, specific performance and quieting title.

The transcript of the hearing reveals that although the county, at the time of cancellation, had returned to plaintiff, by a check, the monies paid by plaintiff at the sale, plaintiff did not accept the attempted payment and the county thereafter canceled the check. Therefore, in light of the court's ruling, the county was ordered to pay

plaintiff $12,120, plus $667 in interest and $150 to cover plaintiff's filing fee in the action. Dismissal of the case with respect to the county was subject to the payment, which was made, and an order dismissing plaintiff's action against the county was subsequently entered on November 3, 2006. A stipulation and order to dismiss plaintiff's action against White, without prejudice, was entered on December 6, 2006. Plaintiff appeals as of right.

## II. ANALYSIS

### A. TEST FOR SUMMARY DISPOSITION UNDER MCR 2.116(C)(8) AND STANDARDS OF REVIEW

MCR 2.116(C)(8) provides for summary disposition where "[t]he opposing party has failed to state a claim on which relief can be granted." A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a complaint. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). The trial court may only consider the pleadings in rendering its decision. *Id.* All factual allegations in the pleadings must be accepted as true. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 380-381; 563 NW2d 23 (1997). "The motion should be granted if no factual development could possibly justify recovery." *Beaudrie, supra* at 130.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004). Issues of statutory construction, as well as constitutional questions, are also reviewed de novo on appeal. *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006); *Wayne Co v Hathcock*, 471 Mich 445, 455; 684 NW2d 765 (2004).

### B. GOVERNING PRINCIPLES OF STATUTORY INTERPRETATION

This Court's primary task in construing a statute is to discern and give effect to the intent of the Legislature. *People v Tombs*, 472 Mich 446, 451; 697 NW2d 494 (2005); *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). The words contained in a statute provide the most reliable evidence of the Legislature's intent. *Id.* at 549. In ascertaining legislative intent, we give effect to every word, phrase, and clause in the statute. *Id.* This Court must consider both the plain meaning of the critical words or phrases, as well as their placement and purpose in the statutory scheme. *Id.* We are mindful to avoid an interpretation that would render any part of a statute surplusage or nugatory. *Bageris v Brandon Twp*, 264 Mich App 156, 162; 691 NW2d 459 (2004). Statutory language is to be read and understood in its grammatical context, unless there is a clear indication that the Legislature intended something different. *Shinholster, supra* at 549. When the wording or language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. *Tombs, supra* at 451; *Shinholster, supra* at 549. "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). Finally, "[c]onflicting provisions of a statute must be read together to produce an harmonious whole and to reconcile any inconsistencies whenever possible." *World Book, Inc v Dep't of Treasury*, 459 Mich 403, 416; 590 NW2d 293 (1999).

C. SUMMARY OF THE PARTIES' APPELLATE ARGUMENTS

Plaintiff argues that, with respect to a tax sale, once the gavel fell and plaintiff, as high bidder, paid for the property, the transaction was complete and he became the fee simple titleholder of the property, thereby entitling him to the deed. Plaintiff construes MCL 211.78m(2) as allowing the county to cancel the sale at any time before the completion of the sale. And, according to plaintiff, even if the county had the right to cancel the sale under MCL 211.78m(2) after the sale was complete, the right did not go beyond the 30-day period in which the county was required by statute to issue and deliver a deed. Plaintiff also argues that the trial court improperly found that title to the property had never vested in the county on the entry of the foreclosure judgment. Next, plaintiff argues that White received constitutionally sufficient notice of the foreclosure proceedings or, at a minimum, an evidentiary hearing on the matter is needed. Finally, plaintiff argues that summary disposition should have been granted in his favor.

The county counters that under MCL 211.78m(2) it had the authority to enact procedures that allowed for cancellation of the sale at any time before the issuance of the deed, and it properly canceled the sale in the case at bar. According to the county, plaintiff incorrectly asserts that plaintiff acquired fee ownership upon acceptance of his bid at auction and payment of the purchase price. Further, MCL 211.78m(2) indicates that the deed shall vest fee simple title to the person submitting the highest bid, unless a defect, such as the notice defect here, is discovered in the foreclosure of the property under MCL 211.78 to 211.78*l*. Moreover, MCL 211.78k(9) authorizes a foreclosure judgment to be set aside if there was a failure to provide minimum due process to the prior owner.

### D. DISCUSSION

Because all of plaintiff's causes of action rely, for the most part, on the premise that the county lacked authority to cancel the sale at auction, the question that we must first address is whether there was a valid statutory or constitutional basis for the county to cancel the sale arising out of the alleged lack of notice to White of the foreclosure proceedings. Several statutory provisions are implicated.

Our attention is first drawn to MCL 211.78m(2), which the parties and the trial court focused on in the proceedings below. As indicated in footnote 4 of this opinion, MCL 211.78m(2) provides, in relevant part:

> Except as provided in subsection (5), property shall be sold to the person bidding the highest amount above the minimum bid. The foreclosing governmental unit may sell parcels individually or may offer 2 or more parcels for sale as a group. The minimum bid for a group of parcels shall equal the sum of the minimum bid for each parcel included in the group. *The foreclosing governmental unit may adopt procedures governing the conduct of the sale and may cancel the sale prior to the issuance of a deed under this subsection if authorized under the procedures.* The foreclosing governmental unit may require full payment by cash, certified check, or money order at the close of each day's bidding. *Not more than 30 days after the date of a sale under this subsection, the foreclosing governmental unit shall convey the property by deed to the person bidding the highest amount above the minimum bid. The deed shall vest fee simple title to the property in the person bidding the highest amount above the minimum bid, unless the foreclosing governmental unit discovers a defect in the foreclosure of the property under sections 78 to 78l.* [Emphasis added.]

We disagree with the county's argument that MCL 211.78m(2) allows the county to adopt a procedure

under which cancellation of a tax sale may be made at any time before a deed is issued regardless of whether the 30 days to issue a deed have expired. We also reject plaintiff's argument that the language of MCL 211.78m(2) only permitted the county to adopt a procedure that allowed for cancellation before the sale was completed.[5] Reading the sentence concerning cancellation procedures in harmony with the sentence concerning the 30-day deadline to issue a deed, we conclude that the county could adopt a procedure that allows cancellation, but the procedure cannot permit cancellation beyond the 30-day period during which a deed must be issued. The authority to cancel is limited to the time before the issuance of a deed, and the deed is required to be issued within 30 days after the date of sale. The county cannot eviscerate and manipulate the 30-day-deed mandate by simply refusing or failing to issue the deed within 30 days and then fall back on the asserted right to cancel at any time before a deed is issued. The county canceled the sale beyond the 30-day period during which it was required to issue the deed; therefore, it cannot rely on the cancellation language of the statute to support its position.

There is, however, additional language in MCL 211.78m(2) that needs to be addressed, as well as other statutory provisions. As indicated above, MCL 211.78m(2) additionally provides that "[t]he deed shall

---

[5] Contrary to plaintiff's argument, *J & L Investment Co, LLC v Dep't of Natural Resources*, 233 Mich App 544; 593 NW2d 196 (1999), does not support the proposition that the county could not cancel the sale after the sale was completed and plaintiff paid the purchase price, nor does it support the proposition that plaintiff obtained fee simple ownership or title upon sale and tender of the purchase price. As stated by our Supreme Court, "[d]elivery of a deed is essential to pass title." *Resh v Fox*, 365 Mich 288, 291; 112 NW2d 486 (1961). We also note that MCL 211.78m(2) speaks of the "*deed* . . . vest[ing] fee simple title to the property in the person bidding the highest amount . . . ." (Emphasis added.)

vest fee simple title to the property in the person bidding the highest amount above the minimum bid, unless the foreclosing governmental unit discovers a defect in the foreclosure of the property under sections 78 to 78*l*." While not coined in the context of a county's right to cancel a transaction, this language indicates that a deed is rendered meaningless, nugatory, or unenforceable if the county discovers a statutory defect in the foreclosure proceedings; fee simple title will not vest because the deed is invalid. MCL 211.78 through 211.78*l* encompass the notice requirements of § 78i(2) to (5) (certified mailing, personal visit, and publication) and various references requiring satisfaction of minimum due process, § 78(2), § 78i(10), and § 78k(9)(e). Accordingly, if White was deprived of constitutionally adequate notice, any deed that plaintiff might have been entitled to receive would not have vested title in plaintiff. If there was no constitutional deprivation or defect, there still may have been a failure to comply with the statutory notice requirements under MCL 211.78i(2) to (5). However, MCL 211.78i(10) provides that any compliance failure with respect to § 78i "shall not invalidate any proceeding under this act" if minimum due process was satisfied. Therefore, a "defect" under MCL 211.78m(2), which could serve as the basis for nullifying the vesting of title, i.e., invalidating the deed, would not include failure to comply with the statutory notice requirements under MCL 211.78i(2) to (5), unless the failure was sufficiently significant that due process was offended. In sum, if White was deprived of constitutionally adequate notice, the language in MCL 211.78m(2) regarding the vesting of title absent a defect would form a basis to deny relief to plaintiff.[6]

---

[6] The provision in MCL 211.78m(2) under consideration does not discuss any procedural mechanism by which to implement or enforce the provision where a defect is discovered. Whether it be through cancella-

We shall return to MCL 211.78m(2) later in this opinion after we address another cancellation provision. MCL 211.78k(9) provides:

> After the entry of a judgment foreclosing the property under this section, if the property has not been transferred under section 78m to a person other than the foreclosing governmental unit, a foreclosing governmental unit may cancel the foreclosure by recording with the register of deeds for the county in which the property is located a certificate of error in a form prescribed by the department of treasury, if the foreclosing governmental unit discovers any of the following:

> * * *

> (e) An owner of an interest in the property entitled to notice under section 78i was not provided notice sufficient to satisfy the minimum requirements of due process required under the state constitution of 1963 and the constitution of the United States.[7]

The authority to cancel the foreclosure under MCL 211.78k(9) arises only if the property has not yet been transferred under MCL 211.78m to a person such as plaintiff. Again, no transfer or conveyance to plaintiff occurred here because the sale was canceled before any deed was issued and delivered. For the reasons stated above regarding construction of the cancellation and deed-issuance language in MCL 211.78m(2), the transfer or conveyance of the property pursuant to a deed

tion or some other procedure, or a court action, we find it proper to substantively address the statutory provision and to apply it in the context of this case.

[7] MCL 211.78k was amended by 2006 PA 611, effective January 3, 2007, but there was no change to § 78k(9). The version of § 78k(9), as amended by 2003 PA 263, effective January 5, 2004, was applicable, rather than the previous version of the statute, given the date when cancellation occurred.

was required to take place within 30 days of the sale, and the county was not entitled to circumvent this mandate by delaying the issuance of the deed beyond the 30-day deadline and then arguing that cancellation was proper because no deed had yet been issued. Thus, MCL 211.78k(9) did not provide the county with authority to cancel the sale beyond the 30-day period.

In our discussion of MCL 211.78m(2) and statutory defects affecting the vesting of title, we referred to MCL 211.78i, which addresses the required notice that the county must provide in foreclosure proceedings. Subsection 78i(10) provides:

> The failure of the foreclosing governmental unit to comply with any provision of this section shall not invalidate any proceeding under this act if the owner of a property interest or a person to whom a tax deed was issued is accorded the minimum due process required under the state constitution of 1963 and the constitution of the United States.[8]

This language suggests that any failure to comply with minimum due process with regard to notice would invalidate the foreclosure judgment and the tax sale to plaintiff. In that same vein, MCL 211.78(2) provides:

> It is the intent of the legislature that the provisions of this act relating to the return, forfeiture, and foreclosure of property for delinquent taxes satisfy the minimum requirements of due process required under the constitution of this state and the constitution of the United States but that those provisions do not create new rights beyond those required under the state constitution of 1963 or the constitution of the United States. The failure of this state or a

---

[8] This language was placed in subsection 10 of the statute by way of amendment, 2003 PA 263, effective January 5, 2004, and the attempts at notice here occurred in December 2003 and January 2004; however, the previous version of the statute contained the identical language but was instead found in subsection 2 of § 78i, 2001 PA 101.

political subdivision of this state to follow a requirement of this act relating to the return, forfeiture, or foreclosure of property for delinquent taxes shall not be construed to create a claim or cause of action against this state or a political subdivision of this state unless the minimum requirements of due process accorded under the state constitution of 1963 or the constitution of the United States are violated.

Another statute that addresses a failure to provide adequate notice is MCL 211.78*l*(1), which provides:

If a judgment for foreclosure is entered under section 78k and all existing recorded and unrecorded interests in a parcel of property are extinguished as provided in section 78k, the owner of any extinguished recorded or unrecorded interest in that property who claims that he or she did not receive any notice required under this act shall not bring an action for possession of the property against any subsequent owner, but may only bring an action to recover monetary damages as provided in this section.

This language indicates that White would not be allowed the opportunity to make a claim for the property and would be relegated to an action for money damages for a notice violation. White does have record title at this point because no deed was issued to plaintiff and the county filed a notice of cancellation of the foreclosure judgment. MCL 211.78*l*(1) incorporates MCL 211.78k, and § 78k(6) vests absolute title in the foreclosing governmental unit if there is no redemption or timely appeal following judgment, as was the case here, thereby depriving the court of jurisdiction to alter the foreclosure judgment. *In re Petition by Wayne Co Treasurer*, 478 Mich 1, 8; 732 NW2d 458 (2007).[9] MCL

[9] The *Wayne Co Treasurer* Court, *supra* at 7 n 10, noted that MCL 211.78k(6) had been amended, and the version of § 78k(6) the Court was addressing did not contain a § 78k(9) exception to § 78k(6), which exception was in effect for purposes of the case at bar. 2003 PA 263. MCL

211.78*l*(1) allows only monetary damages for a notice violation, which would entail statutory notice and constitutional notice,[10] while MCL 211.78k(6) can preclude a court from vacating a foreclosure judgment even if constitutionally adequate notice was not provided, leaving a party without a right to his or her property.

The constitutional ramifications of MCL 211.78*l*(1) and 211.78k(6) were addressed in *Wayne Co Treasurer*, a case where a church, which owned property subject to real property taxes, never received notice of a pending foreclosure because the county treasurer failed to comply with the notice provisions of the GPTA. Notice was sent to a previous owner, and the county treasurer failed to post a notice on the property; the church received no notice whatsoever. A judgment of foreclosure was entered, and after the redemption period expired, the government sold the property to third parties. The church then learned of the foreclosure and filed a motion for relief from the foreclosure judgment, which was granted by the circuit court. The third parties who bought the property at the foreclosure sale intervened in the action. And they argued to the Supreme Court that MCL 211.78k(6) precluded the circuit court from holding the governmental unit's title in-

---

211.78k(6) provides that the government's title "shall not be stayed or held invalid except as provided in subsection . . . (9)." However, we have already rejected application of the cancellation language in § 78k(9) because the county attempted cancellation after the date by which it was required to have issued a deed.

[10] "Because the [statutory] notice provisions provide more notice than is required to satisfy due process, the constitution does not require strict compliance with all the statutory notice requirements." *Wayne Co Treasurer, supra* at 10 n 19. The Supreme Court noted that MCL 211.78*l* provides "a damages remedy that is not constitutionally required." *Wayne Co Treasurer, supra* at 10. This is because statutory notice rights can be violated, giving rise to an action for money damages, yet minimum due process may have been satisfied.

valid, because absolute title had vested in the governmental unit following judgment, thereby making the subsequent tax sale valid. The intervening third parties contended that MCL 211.78*l* limited the church to an action for monetary damages. *Id.* at 4-8.

The Supreme Court disagreed, holding:

> This case concerns the jurisdiction of circuit courts to modify judgments of foreclosure when the foreclosing governmental unit deprives the property owner of due process. Generally, the provision of the General Property Tax Act (GPTA), at issue in this case, as well as recent amendments of the GPTA, reflect a legislative effort to provide finality to foreclosure judgments and to quickly return property to the tax rolls. However, this legislative regime is problematic when the property owner is not provided with constitutionally adequate notice of the foreclosure. This is because MCL 211.78k(6) serves to insulate violations of the Due Process Clause of the United States Constitution and of the Michigan Constitution from judicial review and redress, thereby completely denying the property owner procedural due process. As applied to the limited class of property owners who have been denied due process in this statutory foreclosure scheme, this provision of the GPTA is unconstitutional. Therefore, for the reasons stated herein, we affirm the Wayne Circuit Court's order vacating the judgment of foreclosure and restoring the church's title to the property in question. [*Wayne Co Treasurer, supra* at 4.]

Here, if White was deprived of constitutionally adequate notice, title to the property belongs to him, and plaintiff has no basis for relief. This conclusion is supported by *Wayne Co Treasurer* and the language in MCL 211.78m(2) concerning the vesting of title absent a defect, along with MCL 211.78(2) and 211.78i(10). If White was neither deprived of constitutionally adequate notice nor deprived of statutory notice under MCL 211.78i(2) to (5), plaintiff would be entitled to ownership of the property, with White's interest being

extinguished, leaving no damages or title remedy for him as would be the case for any tax-delinquent property owner who was properly foreclosed on after receiving full statutory and constitutional notice. If White was not deprived of constitutionally adequate notice, but there was a failure to comply with the statutory notice requirements of MCL 211.78i(2) to (5), plaintiff would still be entitled to a deed and ownership because, had a deed been issued as required by MCL 211.78m(2), the deed would have vested titled in plaintiff, as the mere statutory notice violation would not suffice to invoke the discovery-of-a-defect language in MCL 211.78m(2) for the reasons stated above.[11] MCL 211.78k(6) would also require this conclusion because the county would have acquired absolute title through the foreclosure judgment, which title should then have passed to plaintiff in light of the tax sale. That being said, White would have a cause of action against the county for damages pursuant to MCL 211.78l(1).

The Supreme Court in *Wayne Co Treasurer, supra* at 9, set the parameters for resolving whether constitutionally adequate notice was afforded, stating:

> The United States Supreme Court recently has held that "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " Furthermore, " 'when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.' " However, "[d]ue process does not require that a property owner receive *actual notice* before the

---

[11] As reflected in footnote 10 of this opinion, if statutory notice was satisfied under MCL 211.78i(2) to (5), constitutionally adequate notice was also provided.

government may take his property." [Citations omitted; alterations, omission, and emphasis in original.]

Only if the trial court in the instant case determines that there was constitutionally adequate notice must the court proceed to address compliance with the statutory notice provisions, assuming that White pursues a damages remedy. In sum, with respect to ownership of the property, if constitutionally adequate notice was not provided to White, fee simple title should remain with White, but if constitutionally adequate notice was provided to White, fee simple title should be awarded to plaintiff. Of course, if there is evidence that White had somehow acquired actual knowledge of the foreclosure proceedings beforehand, he is not entitled to the property or damages and plaintiff shall be awarded title.[12] Because the record here was not sufficiently developed with regard to the submission of admissible documentary evidence for the purposes of summary disposition, remand is necessary.

### III. CONCLUSION

On remand, the issue to be addressed is whether White was afforded minimum constitutional due process with respect to notice, and, if such notice was provided, the issue of notice under the statute must be examined if White pursues a damages remedy. The

---

[12] Fundamental requirements of due process are satisfied if a party received actual notice. *Alycekay Co v Hasko Constr Co, Inc*, 180 Mich App 502, 506, 448 NW2d 43 (1989); see also *Reenders v Parker*, 217 Mich App 373, 376; 551 NW2d 474 (1996) ("[B]ecause the Reenders concede that they actually received notice three days before the hearing, we do not conclude that the Reenders were denied due process in this case."). Accordingly, if there is credible evidence that shows that White had actual notice of the foreclosure proceedings, due process was not offended, regardless of whether the notice attempts were improper or insufficient.

parties are free to again raise motions for summary disposition or simply await a trial on the matter.[13]

The judgment and order are vacated, and the action is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[13] As a technical matter, and in light of the interests involved, plaintiff must reinstate the action against White, which was dismissed without prejudice, and it is to be consolidated with the action on remand against the county.