STATE OF MICHIGAN
COURT OF APPEALS

CITY OF DEARBORN HEIGHTS,

UNPUBLISHED
November 17, 2016

Plaintiff-Appellant,

v

No. 327928
Wayne Circuit Court
LC No. 12-015619-CH

WAYNE COUNTY TREASURER, WAYNE
COUNTY, B&D FAMILY HOLDINGS, LLC, and
NSTAR COMMUNITY BANK,

Defendants-Appellees.

In re Petition of WAYNE COUNTY TREASURER
for Foreclosure.

WAYNE COUNTY TREASURER,

Petitioner-Appellee,

v

No. 327950
Wayne Circuit Court
LC No. 11-007010-CH

CITY OF DEARBORN HEIGHTS,

Intervenor-Appellant.

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

These consolidated appeals, which are before this Court for a second time, concern property located at 2525 S. Beech Daly Road in Dearborn Heights (the property). In Docket No. 327928, Dearborn Heights appeals as of right the trial court's order granting summary disposition in favor of defendants, the Wayne County Treasurer (the Treasurer), Wayne County, and B&D Family Holdings, LLC (B&D), in its action to quiet title. In Docket No. 327950,

Dearborn Heights appeals by delayed leave granted the trial court's order granting summary disposition in favor of the Treasurer in the related tax foreclosure lawsuit.[1] For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In June 2011, the Treasurer petitioned to foreclose the property because B&D was delinquent on its taxes, interest, fees, and penalties. B&D and the Treasurer agreed that B&D entered into a payment plan agreement on or about January 26, 2012. Under the agreement B&D was required to fully pay the amount owed in four installment payments and in return the redemption period for the property would extend into October 2012. Under the terms of the payment plan, B&D stipulated to the entry of a judgment of foreclosure, which was later entered on March 30, 2012 and filed on April 2, 2012. Subsequently, on July 3, 2012, the Treasurer provided Dearborn Heights with a list of properties that were available for purchase; the subject property was included on the list. On July 18, 2012, Dearborn Heights informed the Treasurer that it wanted to purchase the subject property, and, on July 25, 2012, a Dearborn Heights employee attempted to deliver a check for the property. The employee was informed that the property was no longer available because the Treasurer and B&D had entered into a payment plan "in the past month or so."

In November 2012, Dearborn Heights filed an action for quiet title, asserting that the Treasurer had to accept payment for the property and convey it to Dearborn Heights. Although B&D did not meet the deadlines for each installment payment, it successfully paid off the full amount owed under the payment plan by October 2012. Accordingly, in December 2012, in the foreclosure case, the Treasurer filed a certificate of redemption, and in January 2013, the trial court vacated the foreclosure judgment in an ex parte order. Thereafter, B&D moved for summary disposition in the quiet title case, whereas Dearborn Heights moved to intervene in the foreclosure action. The trial court denied Dearborn Heights's motion to intervene after concluding that the city lacked standing. Further, the trial court granted B&D's motion for summary disposition in the quiet title action, finding that Dearborn Height's suit was an improper collateral attack on the foreclosure action.

Dearborn Heights appealed both cases to this Court, and we reversed and remanded for further proceedings. *City of Dearborn Heights v Wayne Co Treasurer*, unpublished opinion per curiam of the Court of Appeals, issued September 16, 2014 (Docket Nos. 315660; 315667). We concluded that the trial court abused its discretion by denying Dearborn Heights's motion to intervene "because it deprived Dearborn Heights of the opportunity to protect its potential interest in the property that was the subject of the foreclosure action." *Id*. at 4. We also concluded that the trial court erred by determining that the quiet title suit was an improper collateral attack on the foreclosure action because (1) the quiet title action was filed before the foreclosure suit was resolved, (2) Dearborn Heights was not a party in interest in the foreclosure proceedings, and (3) Dearborn Heights did not have "due and legal notice" of the proceedings in

---

[1] *In re Petition of Wayne Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered November 25, 2015 (Docket No. 327950).

that case. *Id*. at 5. However, we declined to reach the merits, concluding that the trial court did not address Dearborn Heights's alleged disputes of fact and did not provide any reasoning to support its decision of law. *Id*.

On remand, Wayne County, the Treasurer, and B&D filed motions for summary disposition in both cases. Relevant to this appeal, Wayne County and the Treasurer argued that summary disposition was proper because the payment plan agreement facilitated the purpose of the General Property Tax Act, MCL 211.1 *et seq*., which is to encourage the efficient and expeditious return of delinquent properties to productive use. They also argued that it was appropriate and necessary for the trial court to vacate the judgment of foreclosure because B&D made the requisite payments under the payment plan agreement. They further argued that due process required that the judgment of foreclosure be set aside because B&D justifiably relied on the payment plan agreement, which provided that the property would be removed from foreclosure if the requisite payments were made and no transfer of the property had occurred. Wayne County and the Treasurer also argued that there were no material issues of fact regarding the agreement that would preclude summary disposition because it was undisputed that there was an agreement and that B&D substantially complied with it.

Similarly, B&D argued that it had the right to enter into a payment plan agreement and its payments were made in full to the satisfaction of Wayne County. B&D also argued that Dearborn Heights had no standing to claim that B&D defaulted under the agreement because it was not a party to the agreement or a third-party beneficiary. Additionally, B&D further argued that the agreement failed to satisfy due process because it led the taxpayer to believe the redemption period was extended and B&D relied on it by not paying its taxes by the statutory redemption deadline. Finally, B&D asserted that the trial court's order vacating the prior judgment of foreclosure was retroactive, so no judgment of foreclosure existed and marketable title was never held by Wayne County to allow it to sell the property to Dearborn Heights.

On March 23, 2015, Dearborn Heights filed a response to B&D's motion for summary disposition. In relevant part, it argued that the property should have been sold to it because the property was not redeemed within 21 days of entry of the judgment. It further argued that (1) the payment plan agreement was not authorized by the General Property Tax Act, (2) the agreement violated the Act because it gave B&D more time to redeem the property than permitted by the Act, (3) the agreement was inconsistent with MCL 211.78m, which required the property to be offered for sale, (4) the agreement was void as contrary to public policy, and (5) B&D defaulted under the agreement. Dearborn Heights argued that the amended ex parte order was void and defendants could not rely on due process because (1) B&D had notice of the tax foreclosure lawsuit, (2) B&D expressly waived its right to notice and a hearing, (3) B&D did not have an interest in the property because its interest was terminated, and (4) B&D did not have a property interest in the property under Michigan law. Finally, Dearborn Heights argued that questions of fact concerning the payment plan agreement precluded summary disposition given that there were different versions of the agreement, different dates of entry given, and different dates of payment provided.

On April 10, 2015, a hearing was held on the motions. With regard to whether the payment plan agreement was authorized by the Act, the trial court stated:

> There is no question in this Court's mind that the Treasurer can enter into installment payment agreement[s] with property owners. However, if this is done a Judgment of Foreclosure should not be entered until after the payment [agreement] is breached. This is because entering the Judgment of Foreclosure prior to that point will, in most cases, extend the redemption period or appeal period beyond the 21 days from the entry of the Judgment of Foreclosure permitted in [the statute]. This is what happened in the instant case.

The trial court concluded that the order vacating the judgment of foreclosure violated MCL 211.78k(6) because the court lost jurisdiction after B&D did not redeem or appeal within 21 days after the judgment was entered. The parties have not challenged that finding on appeal.

The trial court, however, found that a due process claim could exist where the property owner was misled regarding redemption rights.[2] The trial court found that the Treasurer misled B&D into believing that its property would be removed from the foreclosure judgment if it complied with the payment plan agreement and that it was not necessary to redeem the property within 21 days of entry of the judgment. Accordingly, based on the procedural due process violation, the trial court set aside the judgment of foreclosure. The trial court additionally found that there were no questions of material fact regarding the existence of and the date of the payment plan agreement. Further, with regard to Dearborn Heights's claim that B&D did not comply with the agreement, the trial court stated that the Treasurer concluded that there was substantial compliance and Dearborn Heights, who was not a party to the contract or a third-party beneficiary, had no standing to raise the issue. Therefore, the trial court granted summary disposition in favor of the Treasurer, Wayne County, and B&D, and denied summary disposition in favor of Dearborn Heights. Dearborn Heights moved for reconsideration, which the trial court denied. This appeal follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Dearborn Heights argues that the trial court erred by granting summary disposition in favor of Wayne County, the Treasurer, and B&D. The parties' motions for summary disposition were filed pursuant to MCR 2.116(C)(8) and (10). The trial court did not state the subrule on which it relied to grant summary disposition. However, because it considered material outside the pleadings, "this Court will construe the motion as having been granted pursuant to MCR 2.116(C)(10)." *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007). We review de novo a trial court's decision to grant summary disposition

---

[2] In doing so, the trial court rejected Dearborn Heights's claim that the only due process argument that could be raised in this case related to notice in the tax foreclosure suit.

-4-

under MCR 2.116(C)(10).  *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

> In reviewing a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and other evidence introduced by the parties to determine whether no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  The evidence submitted must be considered in the light most favorable to the opposing party.  [*McLean v City of Dearborn*, 302 Mich App 68, 73; 836 NW2d 916 (2013) (citations and quotation marks omitted).]

"Questions of statutory interpretation are also reviewed de novo."  *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 278; 831 NW2d 204 (2013).  Similarly, "[w]hether due process has been afforded is a constitutional issue that is reviewed de novo."  *Id*. at 277.

## B.  ANALYSIS

### 1.  DUE PROCESS

The trial court concluded that, although the payment plan agreement violated the General Property Tax Act, the judgment of foreclosure could be set aside because B&D was denied due process.  It is well-established that a judgment of foreclosure can be set aside even after the expiration of the statutory redemption period if the original property owner's constitutional right to due process was violated.  See, e.g., *In re Petition by Wayne Co Treasurer*, 478 Mich 1, 10-11; 732 NW2d 458 (2007) (*Perfecting Church*) (finding that the Legislature "cannot create a statutory regime that allows for constitutional violations with no recourse" so the provision in the General Property Tax Act that purports "to limit the circuit court's jurisdiction to modify judgments of foreclosure is unconstitutional and unenforceable as applied to property owners who are denied due process."); see also *Gillie v Genesee Co Treasurer*, 277 Mich App 333, 347-355; 745 NW2d 137 (2007) (holding that although the General Property Tax Act did not give the court authority to cancel a sale after expiration of the 30-day period, the sale could be cancelled if the taxpayer was deprived of constitutionally adequate notice).  In fact, MCL 211.78k(9)(e) provides:

> (9) After the entry of a judgment foreclosing the property under this section, if the property has not been transferred under section 78m to a person other than the foreclosing governmental unit, a foreclosing governmental unit may cancel the foreclosure by recording with the register of deeds for the county in which the property is located a certificate of error in a form prescribed by the department of treasury, if the foreclosing governmental unit discovers any of the following:
>
> * * *
>
> (e) An owner of an interest in the property entitled to notice under section 78i was not provided notice sufficient to satisfy the minimum requirements of due process required under the state constitution of 1963 and the constitution of the United States.

-5-

MCL 211.78i(10) provides:

> The failure of the foreclosing governmental unit to comply with any provision of this section shall not invalidate any proceeding under this act if the owner of a property interest or a person to whom a tax deed was issued is accorded the minimum due process required under the state constitution of 1963 and the constitution of the United States.

And MCL 211.78(2) provides:

> It is the intent of the legislature that the provisions of this act relating to the return, forfeiture, and foreclosure of property for delinquent taxes satisfy the minimum requirements of due process required under the constitution of this state and the constitution of the United States but that those provisions do not create new rights beyond those required under the state constitution of 1963 or the constitution of the United States. The failure of this state or a political subdivision of this state to follow a requirement of this act relating to the return, forfeiture, or foreclosure of property for delinquent taxes shall not be construed to create a claim or cause of action against this state or a political subdivision of this state unless the minimum requirements of due process accorded under the state constitution of 1963 or the constitution of the United States are violated.

In other words, if a person was not accorded the minimum due process required under the Michigan and United States Constitutions, then proceedings under the General Property Tax Act can be invalidated, including a judgment of foreclosure.

Dearborn Heights raises several arguments as to why B&D is not entitled to relief on due process grounds. First, Dearborn Heights argues that B&D had no property interest to support a due process claim because B&D's property interest was extinguished when it failed to redeem the property within 21 days after entry of the judgment of foreclosure. However, in *Perfecting Church*, 478 Mich at 5, 11, the Court enforced the church's due process rights even after the judgment of foreclosure was entered and the redemption period had passed. MCL 211.78k(9)(e) also allows for a foreclosure to be canceled after entry of the foreclosure judgment if notice sufficient to satisfy minimum due process requirements was not provided. Moreover, contrary to Dearborn Heights's claim that the payment plan agreement could not be used to support B&D's property interest, the payment plan agreement is not the basis for B&D's property interest. Instead, similar to the church in *Perfecting Church*, B&D has a property interest as the original owner of the property.

Dearborn Heights next argues that B&D was only entitled to process that was due under the General Property Tax Act, i.e., to notice of the proceedings as provided for by the statute. However, in *Gillie*, 277 Mich App at 354, this Court recognized that both constitutionally adequate notice and statutory notice is required. Likewise, in *Perfecting Church*, 478 Mich at 9-10, although the lack of notice was at issue, the Court referred to "minimum due process requirements," which include both notice and an opportunity to be heard. Several provisions of the General Property Tax Act also refer to minimum due process. See MCL 211.78(2); MCL 211.78i(10). Here, it is undisputed that B&D received notice of the foreclosure proceedings, i.e., notice under the statute; however, B&D was denied the opportunity to present its objections

-6-

based on the payment plan agreement, which the trial court found misled B&D to believe that the redemption period was extended.

The trial court concluded that a due process violation can be based on inadequate notice with respect to appellate rights or, in this case, redemption rights. In *Walters v Reno*, 145 F3d 1032, 1042-1043 (CA 9, 1998), the court held that forms issued to aliens charged with civil document fraud violated due process because they, among other things, failed to advise aliens of the need to request a separate hearing in order to contest deportability and failed to inform them that failing to request a hearing could result in immediate deportation. Similarly, in *Day v Shalala*, 23 F3d 1052, 1065-1066 (CA 6, 1994), the court held that a notice that misled claimants by equating a new application with an appeal violated due process. In *Gonzalez v Sullivan*, 914 F2d 1197, 1203 (CA 9, 1990), the court concluded that a notice was inadequate where it did not clearly indicate that the request would become final if no request for reconsideration was made. See also *Herrada v City of Detroit*, 275 F3d 553, 558-559 (CA 6, 2001) (distinguishing between false and misleading statements pertaining to the right to request a hearing or to appeal an adverse decision, which constitute a due process violation, with statements relating to penalties for refusing to act, which do not constitute a due process violation).

Dearborn Heights argues that the cases relied upon by the trial court, *Day* and *Gonzalez*, are distinguishable because they involved *notices* that were required to provide accurate information, whereas this case involves a *contract* that violated the General Property Tax Act. However, the payment plan agreement is not being enforced, nor is it the basis for B&D's property interest. What is of significance is the provision of the agreement that erroneously informed B&D that it did not have to redeem the property by the statutory redemption date. Thus, even though the agreement was found to be unenforceable, it provided B&D with false and misleading information, similar to the notices in the other cases. In other words, B&D was misled to believe that it did not have to redeem the property by the statutory deadline and that its property would be removed from foreclosure if it complied with the payment plan agreement. The misleading information about the right to redeem the property, regardless of its form, constitutes the basis for the due process violation.

Dearborn Heights also argues that B&D was not entitled to notice of state-law remedies that are available in public sources, and that B&D could not rely on the inaccurate information provided when the law was available in the relevant statutes. However, the information regarding B&D's redemption rights was provided as part of an agreement between the parties, which purported to extend the period for redemption granted by the GPTA. It was necessary for the information to be provided regarding the purported extension in order to state the consideration provided by the Treasurer in exchange for B&D's payment. Moreover, the trial court determined that payment plans are allowed under the GPTA, but the problem in this case was that the judgment of foreclosure should not have been entered until B&D defaulted. This, however, was not necessarily clear from the statutes. Thus, B&D could reasonably rely on the information provided in the agreement even though it was inaccurate under the circumstances.

Finally, Dearborn Heights claims there was no due process violation because B&D did not detrimentally rely on the payment plan agreement. See *Day*, 23 F3d at 1066 (allowing the reopening of claims only for individuals who detrimentally relied on the inadequate notices); and *Walters*, 145 F3d at 1044 (considering whether there was prejudice as a result of the

-7-

constitutionally deficient proceedings).  In this case, however, B&D submitted an uncontroverted affidavit indicating that it would have redeemed the property by the statutory deadline if it had it not been informed that the redemption date was extended.  And although Dearborn Heights argues that there was no detrimental reliance because B&D failed to comply with the payment plan agreement, the affidavit submitted by B&D shows that B&D detrimentally relied on the agreement by not redeeming the property by the statutory redemption date.  Thus, there was evidence that, had B&D not entered the agreement, the outcome of the proceedings would have been different.  The events after the expiration of the statutory redemption period are, therefore, irrelevant because the detrimental reliance occurred before the expiration of the redemption period.[3]

## 2.  ISSUES OF FACT

Dearborn Heights next argues that summary disposition is inappropriate because there remain disputed issues of material fact with regard to whether a payment plan agreement actually exists and, if so, when it was entered into.  It is plain that whether a payment plan agreement exists and the date it was entered into are material facts because if there was no agreement, then B&D had nothing to rely on for its due process claim, and if the agreement was entered after the statutory redemption period expired then there could be no detrimental reliance.

Dearborn Heights argues that there is a question of fact regarding the existence of the agreement because two different versions of the agreement were produced during discovery. The two versions contain different paragraph numbers, have a different number of pages, and have different signatures.  The provisions of the agreement, however, are identical in both versions.  Moreover, Diane Darga, the Department Manager for Taxpayer Assistance of the Treasurer's Office, submitted an affidavit explaining that the Treasurer's system was programmed to print two agreements, which were separately executed.  She further explained that "a glitch in the programming" caused the second version of the agreement to be incorrectly numbered.  Moreover, both parties to the agreement have presented evidence that they entered into an agreement.  Accordingly, there is no question of fact regarding whether there is an agreement.

---

[3] Even assuming that B&D was required to comply with the agreement in order to establish detrimental reliance, the Treasurer determined that B&D substantially complied with the agreement and Dearborn Heights does not have standing to challenge whether B&D complied with the agreement because Dearborn Heights was not a party to the agreement and, therefore, cannot enforce any obligations created by the agreement. *Clark v Dalman*, 379 Mich 251, 260; 150 NW2d 755 (1967), impliedly overruled on other grounds by *Fultz v Union-Commerce Assoc*, 470 Mich 460; 683 NW2d 587 (2004), as stated in *Lakeland Regional Health Sys v Walgreens Health Initiatives, Inc*, 604 F Supp 2d 983, 999 (W D Mich, 2009).  Nor was Dearborn Heights a third-party beneficiary of the agreement.  See *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 428; 670 NW2d 651 (2003).

Dearborn Heights next asserts that there is a question of fact regarding when the agreement was entered. B&D initially responded to an interrogatory by stating that "it entered into a payment plan agreement with the Wayne County Treasurer on or about March 31, 2012." B&D, however, amended its answer to indicate that it entered the agreement on January 26, 2012. Further, the affidavit of Tom Rosco, an employee of Dearborn Heights, does not create a question of fact regarding the date of entry. Rosco stated that, on July 25, 2012, an employee of the Treasurer's Office, Robin G. King, informed him that the payment plan agreement had been entered "in the past month or so." King's unspecific statement—that the agreement was entered in the past month *or so*—does not create a question of fact, particularly given that the copies of the agreement that were produced were both dated January 26, 2012. Finally, we note that two of the payment dates in the agreement were before June 2012 and it is unlikely that the agreement was entered after the payment dates stated in the agreement. Likewise, the tax receipts show a payment was made on January 26, 2012, the same date that is on both versions of the agreement.

Finally, Dearborn Heights contends that there was evidence of different dates on which B&D's payments were made, which creates a question of fact regarding whether payments were in fact made by B&D in compliance with the agreement. Dearborn Heights refers to B&D's answers to interrogatories, in which it gave different dates of payment than those written on one version of the agreement. However, it is undisputed that the Treasurer found that B&D substantially complied with the agreement. Dearborn Heights does not have standing to challenge that finding.[4] Moreover, the Treasurer could waive strict compliance with the payment dates, which was a condition in its favor, *Cobbs v Fire Ass'n of Philadelphia*, 68 Mich 463, 464; 36 NW 222 (1888), and it clearly did so by accepting the late payments and filing the certificate of redemption. Thus, there is no question of fact that B&D complied with the agreement.

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

---

[4] See note 3, supra.

-9-