J & L INVESTMENT COMPANY, LLC v DEPARTMENT OF NATURAL
RESOURCES

Docket No. 194698. Submitted September 2, 1998, at Lansing. Decided
January 29, 1999, at 9:00 A.M.

J & L Investment Company, L.L.C., brought an action in the Ingham
Circuit Court against the Department of Natural Resources and the
chief of the department's real estate division, Rodney Stokes, seek-
ing declaratory and equitable relief against the DNR and monetary
damages from Stokes on the basis of the defendants' removal of
certain parcels of tax-reverted property from a public auction at
which the plaintiff's agents were allegedly willing and able to bid
for and purchase the parcels. The removal was prompted by the
city of Lansing's request that the DNR remove the parcels from the
auction to allow the city to later acquire title to the parcels. The
court, Thomas L. Brown, J., granted the defendants' motion for
summary disposition, finding that the defendants were under no
duty that prevented them from removing the parcels from the auc-
tion. The plaintiff appealed.

The Court of Appeals held:

1. The court correctly concluded that nothing in MCL 211.131(1);
MSA 7.188(1) or MCL 324.2101(1); MSA 13A.2101(1) was intended
to supersede general auction law as it relates to when property
may be withdrawn from an auction.

2. General auction law provides that auctions are presumed to be
held "with reserve," whereby the owner reserves the right not to
sell, unless otherwise specified. Placing property up to bid at an
auction held "with reserve," is an invitation, and not an offer, to
contract. The owner may withdraw the property from sale any time
before the auctioneer signifies acceptance of the highest bid.

3. The DNR reserved the right to withdraw the subject parcels
from the auction any time before the auctioneer signified accept-
ance of the highest bid, and the parcels were withdrawn before the
auction began. The plaintiff failed to state a claim upon which
relief could be granted.

4. The defendants' listing of the parcels in a public auction book-
let advertising the auction merely represented an invitation for
offers. There was no offer and acceptance, contract, or breach of

contract because the parcels were withdrawn before the auction began.

5. The defendants did not breach any legal duty because they had no statutory or other duty to hold a "without reserve" auction of the advertised property and were entitled to withdraw it from the auction until the auctioneer signified acceptance of the highest bid. Affirmed.

1. AUCTIONS AND AUCTIONEERS — DEPARTMENT OF NATURAL RESOURCES — TAX-REVERTED STATE PROPERTY — WITHDRAWAL FROM AUCTION.

Nothing in MCL 211.131(1); MSA 7.188(1) or MCL 324.2101(1); MSA 13A.2101(1) is intended to supersede general auction law as it relates to when property may be withdrawn from an auction.

2. AUCTIONS AND AUCTIONEERS — AUCTIONS WITH RESERVE — AUCTIONS WITHOUT RESERVE — WITHDRAWAL FROM AUCTION.

Auctions are presumed to be held "with reserve" unless otherwise specified; placing property up for bid at an auction held "with reserve" is an invitation, and not an offer, to contract and the owner may withdraw the property from sale any time before the auctioneer signifies acceptance of the highest bid; in an auction held "without reserve," the owner enters into a collateral contract with persons bidding at the sale that the owner will not withdraw the property from sale and, if the owner wrongfully withdraws the property, the highest bidder is entitled to damages or the property.

3. CONTRACTS — OFFER — ACCEPTANCE.

There must be an offer and an acceptance before there can be a legally enforceable obligation.

4. AUCTIONS AND AUCTIONEERS — TAX-REVERTED STATE PROPERTY — DEPARTMENT OF NATURAL RESOURCES — AUCTIONS WITHOUT RESERVE.

MCL 211.131(1); MSA 7.188(1) and MCL 324.2101(1); MSA 13A.2101(1) do not impose on the Department of Natural Resources or its employees a duty to hold a "without reserve" auction when the department conducts a public auction of tax-reverted state property.

*Dood and Wilson* (by *John J. Dood*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Katharyn A. Barron* and *Brad H. Beaver*, Assistant Attorneys General, for the defendants.

Before: MacKenzie, P.J., and Bandstra and Markman, JJ.

Per Curiam. Plaintiff appeals as of right an order entered by the circuit court granting defendants', Department of Natural Resources (DNR) and Rodney Stokes, chief of the DNR's real estate division, motion for summary disposition. We conclude that the circuit court correctly determined that defendants were under no duty that prevented them from removing parcels of property from a public auction sale, and we affirm.

On April 18, 1994, an employee of the real estate division of the DNR wrote a letter to the city of Lansing, inquiring whether it would be interested in reserving, and later acquiring title to, certain tax-reverted property in Ingham County. After explaining that any interest in the property should be acknowledged by completion of an attached application, the letter stated:

> Therefore, if we do not hear from you indicating an interest no later than October 1, 1994, we will assume that you do not wish to acquire the property and we will include them in our auction sale. It must be expressly understood that once properties are included in our auction sale listing, no applications will be accepted.

After receiving no response from the city of Lansing, on approximately February 1, 1995, the DNR's real estate division distributed a booklet entitled "Public Auction State Land," which provided a listing of state-acquired land parcels located in Ingham County, including those identified as sale numbers 104 to 108 (the subject parcels). The subject parcels were among the ones mentioned in the DNR letter to the city of

Lansing. They were to be auctioned on March 27, 1995.

On March 20, 1995, the principal planner for the Lansing Department of Planning and Neighborhood Development sent a letter requesting that the DNR reserve certain parcels from the March 27 auction, including the subject parcels. Plaintiff alleged that, although it learned on March 22, 1995, that the DNR intended to remove these parcels from the auction, it was "ready, willing and able" to bid for and purchase them.

On March 27, 1995, the DNR posted a notice at its public auction, advising that certain parcels, including the subject parcels, had been removed from the list of properties to be auctioned. Plaintiff alleged that although its agents were prepared to purchase these parcels, they were prohibited from bidding because of the withdrawal. Nevertheless, on April 3, 1995, plaintiff tendered an application, minimum bid price payment, and various fees to the DNR for the purchase of several tax-reverted parcels, including the subject parcels. However, plaintiff's bid on the subject parcels was rejected because they had been withheld from the auction.

Plaintiff filed an action seeking declaratory and equitable relief against defendant DNR and monetary damages against defendant Stokes for "improperly" removing the subject parcels from the public auction. Specifically, plaintiff claimed that defendants had made a "commitment" to sell and accept the highest bid on the subject parcels on the basis of the "express representation" contained in its public auction booklet and its longstanding policies. Plaintiff also claimed that defendants breached their statutory duty by

removing the tax-reverted parcels from the auction arbitrarily and in violation of the DNR's own policies.

In its opinion granting defendants' motion for summary disposition, the trial court reasoned

> that the statutory scheme dealing with the circumstances in which state property may be publicly auctioned was never intended to supersede general auction law as it relates to when property may be withdrawn from an auction. Accordingly, it is necessary to determine pursuant to auction law whether the property was properly removed from the auction.
>
> *        *        *
>
> . . . [T]he general rule is that property may be removed from an auction at least up until bidding has commenced. [Anno: *Withdrawal of property from auction* sale], 37 ALR2d 1049. In cases where the auction is conducted with reserve, the seller may remove property up to the point where a bid is accepted.
>
> In this instance, the property at issue was removed prior to the commencement of the auction. Nothing in the applicable statutory language, the DNR's Public Auction Sale Land Booklet, or the letter to the City of Lansing created an obligation on the part of the DNR to offer the property for sale at the public auction.

After concluding that plaintiff's claim against defendant Stokes similarly failed "[b]ecause neither the applicable statute, nor the custom or policy of the DNR required that plaintiff be afforded an opportunity to bid," the court granted defendants' motion for summary disposition.[1]

---

[1] Although the trial court granted the motion under MCR 2.116(C)(8) and (10), the record shows that the trial court accepted the facts pleaded as true and rejected the claim as legally insufficient. Accordingly, we review the trial court's order as one granting summary disposition under MCR 2.116(C)(8).

"Appellate review of a motion for summary disposition is de novo." *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). This Court "must review the record to determine if defendant was entitled to judgment as a matter of law." *Ballard v Ypsilanti Twp*, 216 Mich App 545, 547; 549 NW2d 885 (1996), aff'd 457 Mich 564; 577 NW2d 890 (1998). MCR 2.116(C)(8) tests the legal sufficiency of a claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted, *Spiek, supra*, and factual allegations contained within the plaintiff's complaint must be accepted as true, *Simko v Blake*, 448 Mich 648, 654; 532 NW2d 842 (1995).

The purpose of statutory interpretation is to "ascertain and give effect" to the Legislature's intent. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). Although judicial construction is not permitted if the "plain and ordinary" meaning of the language of a statute is clear, it is permitted when "reasonable minds" may differ regarding the meaning of the statute. *Id.* In addition, "well-settled common-law principles are not to be abolished by implication . . . ." *Id.* Therefore, where there is nothing in the language of a statute to the contrary, it is appropriate to give reference to established rules of common law in ascertaining the meaning of its provisions. *Nummer v Dep't of Treasury*, 448 Mich 534, 544; 533 NW2d 250 (1995); *Mayhall v A H Pond Co, Inc*, 129 Mich App 178, 182; 341 NW2d 268 (1983).

The parties' dispute centers on whether the following two statutory provisions required the DNR to publicly auction the subject parcels:

> The director of the department of natural resources may, with the approval of the commission of natural resources, withhold from sale any land that he or she determines to be suitable for state forests, state parks, state game refuges, public hunting, or recreational grounds. The director may set a minimum price for land not withheld from sale. . . . [A]ll land not withheld from sale and not held by a city or village shall be offered for sale by the director . . . , pursuant to Act No. 21 of the Public Acts of 1873, as amended, being sections 322.261 to 322.266 of the Michigan Compiled Laws. . . . [MCL 211.131(1); MSA 7.188(1).]
>
> The department may sell sites to . . . governmental units of the state and to agencies thereof from tax reverted state lands under the control of the department . . . . The application for the purchase or transfer of tax reverted state lands shall be made by the proper officers of a . . . governmental unit . . . upon forms prepared and furnished by the department for that purpose. [MCL 324.2101(1); MSA 13A.2101(1).]

Review of these statutes reveals no language addressing when defendants may withdraw property from a public auction for a state use or for sale to some other governmental unit.[2] Therefore, the trial court correctly concluded that nothing in the applicable statutory language was "intended to supersede general auction law as it relates to when property may be withdrawn from an auction" because anything that was not part of the Legislature's intent must not be read into these provisions. *In re Marin*, 198 Mich App 560, 564; 499 NW2d 400 (1993). Further, because the applicable statutory language provides no indica-

---

[2] Plaintiff argues that the use of the word "shall" in the first of these statutes required the public auction of the subject parcels once they were listed in the schedule for the auction. For the reasons stated below, we reject that meaning of "shall" and conclude that this language specifies the manner in which a sale is to be held, i.e., in compliance with 1873 PA 21. MCL 322.261-322.266; MSA 13.511-13.516.

tion to the contrary, it should be interpreted with reference to established rules of common law and given its common-law meaning. *Nummer, supra; Mayhall, supra.*

Regarding "general auction law," the trial court accurately noted the absence of "any Michigan case law dealing with the right of a seller to withdraw property from an auction." However, in other jurisdictions, auctions are presumed to be held "with reserve," i.e., the owner reserves the right not to sell, unless otherwise specified. *Pyles v Goller,* 109 Md App 71, 81; 674 A2d 35 (1996); *Cuba v Hudson & Marshall, Inc,* 213 Ga App 639, 639; 445 SE2d 386 (1994); 1 Corbin, Contracts (rev ed, 1993), § 4.14, pp 638-639. Placing property up for bid at an auction held "with reserve," is considered an invitation, and not an offer, to contract. *Pyles, supra;* Corbin, § 4.14, pp 638-639. Therefore, an owner may withdraw the property from sale any time before the auctioneer signifies acceptance of the highest bid, i.e., at the "fall of the hammer." *Pyles, supra; Cuba, supra; New York Guardian Mortgage Co v Brokenborough,* 394 Pa Super 105, 107; 575 A2d 121 (1990); 7A CJS, Auctions & Auctioneers, § 11, p 869; 37 ALR2d 1049, § 2[a]; Corbin, § 4.14, pp 638- 639.

In this case, review of the trial court record reveals nothing suggesting that the March 27 auction would be held "without reserve." In an auction held "without reserve," the property "owner has entered into a 'collateral contract' with persons bidding at the sale that he will not withdraw the property from sale, and if he wrongfully withdraws the property, the highest bidders are entitled either to damages or the property." *McFarland v Northwest Realty Co,* 362 NW2d 98, 99

(SD, 1985); see, also, 7A CJS, p 869; Corbin, § 4.14, pp 641-642. The DNR letter to the city of Lansing could not constitute such a "collateral contract" because it was not addressed to plaintiff or any other "persons bidding at the sale" and because it made no representation that the parcels at issue would not be withdrawn from the sale. To the contrary, defendants' "Public Auction State Land" booklet, relied on by plaintiff in its complaint, expressly provides that "the Natural Resources Department reserves the right to reject any or all bids." We conclude that the DNR had the right to withdraw the subject parcels from the auction any time before the "fall of the hammer" on March 27, 1995. *Pyles, supra; Cuba, supra; Brokenborough, supra;* 7A CJS, p 869; Corbin, § 4.14, pp 638-639. Considering the public auction booklet's express reservation of the right to reject any bids, we conclude that a contract could not be formed until defendants accepted the highest bid, defendants having made no express or implied agreement to accept the highest bid. *Cuba, supra,* pp 640-641. Accordingly, plaintiff failed to state a claim on which relief can be granted. MCR 2.116(C)(8).

Regarding plaintiff's contract claims, "[b]efore there can be a legally enforceable obligation[,] there must be an offer and an acceptance." *Mathieu v Wubbe,* 330 Mich 408, 412; 47 NW2d 670 (1951). Defendants' tax-reverted parcel listing in its public auction booklet merely represented an invitation for offers. *Pyles, supra;* Corbin, § 4.14, pp 638-639. Because the parcels were withdrawn before the auction commenced, there was no "offer and an acceptance" and, therefore, no contract or breach of contract. *Mathieu, supra.* Regarding plaintiff's breach of duty claims,

defendants were under no statutory or other legal duty to hold a "without reserve" auction of advertised property but, instead, defendants were entitled to withdraw property from the auction until the "fall of the hammer." *Pitchfork Ranch Co v Bar TL*, 615 P2d 541, 548-549 (Wy, 1980); *Jackson v L S Brown Co*, 86 Ga App 310, 313; 71 SE2d 521 (1952); 7A CJS, pp 868-869. Because defendants properly withdrew the subject parcels before the auction commenced, defendants did not breach any legal duty. *Id.*

We affirm.