# STATE OF MICHIGAN

# COURT OF APPEALS

MARQUETTE PROPERTY GROUP, INC.,

      Plaintiff-Appellant,

v

RANGE BANK NA, as Trustee of the HELEN
MCCRACKEN IRREVOCABLE TRUST,

      Defendant-Appellee.

UNPUBLISHED
October 11, 2018

No. 341372
Marquette Probate Court
LC No. 17-033800-CZ

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Defendant sent out invitations to bid on five parcels of real property to several recipients. One of only two bids received in response was from plaintiff, which offered to pay the highest purchase price for the properties. However, because plaintiff's bid was accompanied by several conditions, defendants did not accept plaintiff's offer. Instead, defendant sent its prospective purchasers a uniform purchase agreement form, which plaintiff did not complete. Instead, plaintiff waived the conditions it had previously attached to its initial offer, and informed defendant that it considered its offer to have been accepted. Plaintiff filed suit against defendant seeking specific performance of a contract for sale of the properties and to quiet title, arguing that defendant had conducted an auction with reserve and that plaintiff's offer—as the highest bid—was automatically accepted when defendant was no longer accepting new bids. Defendant filed a motion for summary disposition under MCR 2.116(8) (failure to state a claim) and (10) (no genuine issue of material fact), which the trial court granted. Plaintiff appeals as of right. We affirm.

## I. FACTS

On July 27, 2017, defendant sent a letter to Mark Fuller, indicating that it was "accepting offers to purchase" five parcels of real property located in Marquette. The letter stated that the minimum "bid" for the properties was $686,000, and that any "offer" must be accompanied by a preapproval letter securing financing or a verification of funds necessary to meet the purchase price. The letter added that "[a]ll contingencies to purchase must be cleared within 30 days of acceptance. Offers received by Range Bank will remain sealed until the final deadline of 5:00 pm (EST), August 15, 2017." A letter of intent form was attached to the July 27, 2017 letter,

-1-

with areas left blank for prospective purchasers to indicate their identities, offers of price, and desired conditions.

On August 15, 2017, Maria Mendini-Fuller—who was Mark Fuller's wife and president of plaintiff, Marquette Property Group, Inc.—responded with a completed letter of intent, indicating plaintiff's offer to purchase the properties for $705,251. The letter of intent began with the following language:

> This letter sets forth some of the basic terms under which Seller and Purchaser would be interested in entering into a Real Estate Purchase Agreement. It serves as a letter of intent ("Letter") from [plaintiff] ("Purchaser") in which Purchaser has set forth its interest in acquiring the subject Property. Nevertheless, please be advised that this letter is not contractually binding on the parties and is only an expression of the basic terms and conditions to be incorporated in a formal written agreement.

Plaintiff's offer also came attached with the following five conditions:

> 1. Purchaser would like to include an escalation clause to increase the purchase price by $1,000.00 (one thousand dollars) over the nearest offer up to $720,000.00 (seven hundred twenty thousand).
>
> 2. Offer includes all personal property currently on the premises.
>
> 3. Seller pays all title insurance and property transfer taxes.
>
> 4. Seller provides boundary survey.
>
> 5. Water and septic will have an acceptable inspection at the purchaser's expense within thirty days.

The deadline to submit bids passed, and only two sealed bids were received. Plaintiff's was the higher bid. However, the other bid was free of any conditions. For that reason, defendant did not accept plaintiff's offer outright. A representative of defendant told Fuller and Mendini-Fuller that if they were willing to forego the conditions attached to their offer, defendant would accept plaintiff as the purchaser. They declined to do so at that time.

Less than a week later, defendant's counsel sent plaintiff a letter, which stated:

> In order to have all of the interested parties bid on an equal basis, [defendant] will be preparing a proposed form purchase agreement . . . . The purchase agreement will contain only those conditions which are acceptable to [defendant] . . . . No additional conditions or stipulations other than those in the form purchase agreement will be accepted by [defendant].

Defendant then sent Mendini-Fuller another letter with an unsigned purchase agreement form attached. Defendant reiterated that no changes to the purchase agreement would be accepted, with the exception of prospective purchasers' addition of a proposed purchase price.

The letter also stated that defendant would review submitted purchase agreements, would notify plaintiff by email if its "offer" had been accepted and, at that point, defendant "would sign the purchase agreement of any offer that it determine[d] to accept which will then constitute a binding agreement between [defendant] and the offering party." The letter concluded with the following language:

> [Defendant] reserves the right to reject any and all offers for the property; to remove the property from sale, or to list the property with a real estate agent. The attached form purchase agreement will not be binding on the parties until it is signed both by . . . the buyer and by [defendant], as the seller.

The purchase agreement form supplied to plaintiff provided for the conditions that plaintiff initially sought pertaining to personal property on the premises, title insurance and property transfer taxes. It did not, however, provide for an escalation clause, boundary survey, or water and septic system inspection. The purchase agreement form also stated that it would become effective and binding on the parties only after both had signed the agreement, and only if both had signed before September 1, 2017.

Soon after, Mendini-Fuller responded with a final letter, which stated that plaintiff was willing to forego all of its previously asserted conditions and sign the agreement once defendant presented a title commitment for plaintiff's review. The letter concluded by stating:

> We consider our bid to have been accepted, subject only to the removal of these contingencies, which has now occurred. We are immediately prepared to sign the Purchase Agreement prepared by your counsel, but only when the Agreement is executed by [defendant] as SELLER. We do not accept the conditions imposed by [the] August 23, 2017 letter.

Plaintiff filed this action against defendant in September of 2017, claiming that defendant breached a contract between the parties for the sale of the properties and requesting specific performance of the contract. Plaintiff also included an action to quiet title. Defendant filed a motion for summary disposition under MCR 2.116(C)(8) and (10), which the trial court granted. In a written opinion, the trial court held that (1) there was no meeting of the minds between the parties regarding the essential terms of the contract because the July 27, 2017 letter from defendant did not contain an offer, but merely invited offers from prospective buyers; (2) even though plaintiff's bid might be considered an offer, defendant did not accept the offer; (3) the letter of intent supplied by defendant expressly contemplated further negotiation of material terms, and more than mere assent to the terms of the letter of intent were required to form a contract between the parties; (4) the letter of intent contained language explicitly stating that it was not meant to contractually bind the parties; (5) nothing in the documents exchanged between the parties indicated that defendant intended to hold an auction for the properties;[1] (6) regardless of plaintiff's subjective belief that it was engaged in an auction, "the unilateral subjective intent

---

[1] Neither the parties nor the trial court could identify a firm legal definition of the term "auction."

of one party cannot control the terms of a contract;" (7) even if the parties had engaged in an auction, defendant expressly retained the right to require a written agreement before the parties would be contractually bound; and (8) because no written agreement was signed by defendant or one of its agents, any agreement for the sale of the properties was invalid under the statute of frauds, MCL 566.108.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). The existence of a contract is a question of law that this Court reviews de novo. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). We also review de novo questions of contract interpretation, *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003), or the legal effect of contractual clauses, *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 369; 666 NW2d 251 (2003).

## III. ANALYSIS

Motions under MCR 2.116(C)(8) test the legal sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (citations and quotation marks omitted). When considering motions under subrule (C)(8), a court only examines the pleadings. MCR 2.116(G)(5).

Under MCR 2.116(C)(10), summary disposition can be granted if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Motions for summary disposition under MCR 2.116(C)(10) test the factual sufficiency of the complaint. *Maiden*, 461 Mich at 120. "A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Dextrom*, 287 Mich App at 416. When evaluating motions brought under this subrule, a trial court must consider—in the light most favorable to the nonmoving party—the parties' affidavits, pleadings, depositions, admissions, and other documentary evidence. *Id*., citing MCR 2.116(G)(5). Such evidence is required when judgment is sought pursuant to subrule (C)(10). MCR 2.116(G)(3)(b). Motions under subrule (C)(10) "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). The nonmoving party may not rest upon its pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. If the nonmoving party fails to do so, the moving party is entitled to judgment as a matter of law. *Maiden*, 461 Mich at 120.

## A. AUCTIONS WITH RESERVE

Plaintiff first contends that the trial court erred when it held that defendant did not intend to sell the properties via an auction with reserve. We disagree. Michigan statutory authority does not appear to define the term "auction" as it applies to the sale of real property.[2] We turn, then, to other sources for guidance. According to Black's Law Dictionary, an auction is "[a] public sale of property to the highest bidder; a sale by consecutive bidding, intended to reach the highest price of the article through competition for it." *Black's Law Dictionary* (10th ed). Auctions can be further divided into "auctions without reserve" and "auctions with reserve." An "auction without reserve," also called an "absolute auction," is defined as

> [a]n auction in which the property will be sold to the highest bidder, no minimum price will limit bidding, the owner may not withdraw property after the first bid is received, the owner may not reject any bids, and the owner may not nullify the bidding by outbidding all other bidders. In an auction without reserve, the owner essentially becomes an offeror, and each successively higher bid creates a contingent acceptance, with the highest bid creating an enforceable contract. [*Id.*]

An "auction with reserve," contrastingly, is "[a]n auction in which the property will not be sold unless the highest bid exceeds a minimum price." *Id.* Michigan courts appear to have recognized in passing the distinction between auctions with and without reserve. See *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 457; 646 NW2d 455 (2002) (noting that an agreement that expressly provided to sell an island "at absolute auction with no minimums or reserves . . . to the highest bidder(s) regardless of the bid price" and precluded the seller from establishing a reserve on bidding was an "absolute auction with no reserve"); *J & L Investment Co, LLC v Dep't of Natural Resources*, 233 Mich App 544, 551; 593 NW2d 196 (1999) (noting the existence of auctions "with reserve" in other jurisdictions, where sellers reserve the right not to sell unless otherwise specified).[3] Even so, the courts have not outlined the precise elements that generally constitute an "auction," whether it be conducted with or without reserve.

---

[2] Michigan statutes are not without reference to auctions, with notable examples stemming from the adopted text of Article 2 of the Uniform Commercial Code, MCL 440.2101 *et seq.*, and portions of Chapter 446 of the Michigan Compiled Laws, MCL 446.26 through MCL 446.35; MCL 446.51 through MCL 446.60. However, these provisions pertain only to transactions in goods, see MCL 440.2102; MCL 440.2105(1), or to sales of personal property, see MCL 446.57, respectively. Thus, neither is of any aid in determining the proper procedure for conducting an auction of real property.

[3] Importantly, *Rose*, 466 Mich at 456-458, concerned an agreement between private parties for the sale of plaintiff's land via auction without reserve. The agreement expressly stated that "[t]he [defendant] will sell the Property at absolute auction with no minimums or reserves," leaving no ambiguity as to the parties' intent to participate in an auction. *Id.* at 457. Contrastingly, *J & L Investment Co, LLC*, 233 Mich App at 546-547, 549-550, concerned whether a governmental entity was obligated to publicly auction parcels of real property under

It is true that defendant set a minimum price at which it would accept offers (bids) for purchase. To some small degree, this lends itself to plaintiff's theory that defendant engaged in an "auction with reserve." See *Black's Law Dictionary* (10th ed). However, without any indication in any of the documents presented that defendant intended to conduct an auction of any kind, plaintiff's theory rests precariously on this single fact. Plaintiff supports its theory by noting that the July 27, 2017 letter contains the word "bid." According to Black's Law Dictionary, a bid refers to "[a] buyer's offer to pay a specified price for something that may or may not be for sale." *Black's Law Dictionary* (10th ed). A "sealed bid," to be more precise, is "[a] bid that is not disclosed until all submitted bids are opened and considered simultaneously." *Id*. Black's Law Dictionary indicates that a bid might occur at an auction but it does not state that this is the *only* context in which parties might bid for items or property being sold. See *id*.

Bids arise in other contexts as well. In general contracts for the sale of land, see, e.g., *Kleiman v Bd of Co Rd Comm'rs for Wayne Co*, 336 Mich 602, 604-605; 58 NW2d 816 (1953), or typical construction contracts, see, e.g., *Kutshe v Ford*, 222 Mich 442, 446-447; 192 NW 714 (1923), for example, it is commonplace for parties to "bid" on property or jobs after being invited to make offers to do so. These cases reveal the key distinction that separates the situation at bar from the typical auction. In *Kleiman*, 336 Mich at 605, our Supreme Court held that the public posting of the plaintiff's offer to purchase land from the defendant was not, without express or implied agreement by the defendant to accept the initial or highest offers received on or before a fixed deadline, an acceptance of the plaintiff's offer. Rather, the postings merely constituted *invitations* to receive further bids from other prospective purchasers. *Id*. In *Kutshe*, 222 Mich at 446-447, the Court also drew the distinction between an invitation to receive offers and a bid made pursuant to that invitation, which constituted an offer to contractually bind the parties. These cases, and others, invoke doctrine "analogous to the rules governing auction sales," that invitations to bid are not, themselves, offers. See 1 Williston, Contracts (4th ed), § 4:13, pp 541-542.

Nevertheless, this situation is distinguishable from a sale via auction, in which "it is possible for the seller to make an operative offer to sell and thus cause each bid to be an acceptance of the offer. *All that is necessary is that the seller shall express such an intention clearly and bring it sufficiently to the attention of the bidders*." 1 Corbin, Contracts (rev ed), § 4.14, p 641 (emphasis added). This harkens back to the well-established principle that, in examining the language of a contract, courts are to read the terms of the instrument in accordance with their "ordinary and plain meaning if such would be apparent to a reader . . . ." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). It is the obligation of the courts to determine the intent of the parties in resolving questions of contract interpretation. *Quality Prod & Concepts Co*, 469 Mich at 375. That is, " 'principles of contract interpretation require one to first look to a contract's plain language. If the plain language is clear, there can be only one reasonable interpretation of its meaning and, therefore, only one meaning the parties

---

MCL 211.131(1), which was repealed by 2005 PA 183, and MCL 324.2101(1). In this regard, *J & L Investment Co, LLC* is factually distinguishable. However, it is among the only binding authorities discussing the rules that govern auctions with reserve in Michigan.

could reasonably expect to apply.' " *Wilkie*, 469 Mich at 61, quoting *Singer v American States Ins*, 245 Mich App 370, 381 n 8; 631 NW2d 34 (2001). There is absolutely no indication in any of the documents exchanged between the parties that defendant intended to conduct an auction, with reserve or otherwise. Accordingly, although defendant's method of collecting offers might bear some semblance to an auction with reserve,[4] the trial court could not read into the contract a term providing for an auction where none existed. See *Northline Excavating, Inc v Livingston Co*, 302 Mich App 621, 628; 839 NW2d 693 (2013), citing *Terrien v Zwit*, 467 Mich 56, 75; 648 NW2d 602 (2002).

Plaintiff contends that defendant was still not entitled to summary disposition because plaintiff alleged, in its complaint, that defendant placed the properties up for bid at auction. It is true that, when deciding motions for summary disposition under MCR 2.116(C)(8), courts are to accept as true any factual allegations in the plaintiff's pleadings and under (C)(10), are to construe the facts in the light most favorable to the plaintiff. *Maiden*, 461 Mich at 119-120; *Dextrom*, 287 Mich App at 416. However, when opposing motions for summary disposition under subsection (C)(10), the nonmoving party cannot prevail on conclusory statements made in its complaint that are left unsupported by allegations of fact. *Rose*, 466 Mich at 470; *Kloian v Schwartz*, 272 Mich App 232, 241; 725 NW2d 671 (2006). Therefore, without any proof in the documents submitted to the trial court that the parties participated in an auction, plaintiff cannot move beyond defendant's motion by simply stating that an auction was contemplated by the parties. See *Rose*, 466 Mich at 470; *Kloian*, 272 Mich App at 241.

## B. CONTRACT FORMATION

Plaintiff next challenges the trial court's determination that the parties had not formed a binding contract for the sale of land. Again, we disagree. "The essential elements of a valid contract are the following: '(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.' " *Hess v Cannon Twp*, 265 Mich App 582, 592; 696 NW2d 742 (2005) (citation omitted). Notably, the mutuality of obligation element has been subsumed into the element of consideration in Michigan. *Hall v Small*, 267 Mich App 330, 334-335; 705 NW2d 741 (2005). That is, if there is consideration supporting the formation of a contract, there is also mutuality of obligation. *Id*. Before a contractual relationship is established, there must also be an offer and an unambiguous acceptance in strict conformance with that offer. *Kloian*, 273 Mich App at 452.

Plaintiff correctly notes that defendant's July 27, 2017 letter to Fuller was not an offer. "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id*. at 453 (quotation marks omitted). As previously discussed, the July 27, 2017 letter merely constituted an invitation to receive offers from prospective purchasers, like plaintiff. See 1 Williston, Contracts (4th ed), § 4:13, pp 541-542. This parallels the procedure that occurs in

---

[4] Auctions with reserve, when they occur, are considered invitations, not offers, to contract. *J & L Investment Co, LLC*, 233 Mich App at 551.

an auction with reserve. See *J & L Investment Co, LLC*, 233 Mich App at 551. Even so, plaintiff's completed letter of intent, sent in response to defendant's invitation and indicating plaintiff's "interest in acquiring the subject Property," constitutes a definite manifestation of plaintiff's willingness to enter a contract. See *Kloian*, 273 Mich App at 449. Where plaintiff's argument falters, however, is in its contention that defendant accepted its offer. " '[A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose.' " *Id*. at 453-454, quoting *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 626-627; 692 NW2d 388 (2004). The plain language of the documents exchanged between the parties indicates, unambiguously, that defendant did not desire to be bound by the terms of plaintiff's offer. In the letter of intent with blanks submitted to plaintiff with the July 27, 2017 letter, defendant stated "please be advised that this letter is not contractually binding on the parties and is only an expression of the basic terms and conditions to be incorporated in a formal written agreement." When sending out uniform purchase agreement forms to its prospective purchasers, defendant specified that plaintiff would be notified by email if its offer had been accepted, indicating that no acceptance had yet occurred. The letter also contained the following language:

> [Defendant] will sign the purchase agreement of any offer *that it determines to accept* which will then constitute a binding agreement between [defendant] and the offering party.
>
> * * *
>
> [Defendant] reserves the right to reject any and all offers for the property; to remove the property from sale, or to list the property with a real estate agent. *The attached form purchase agreement will not be binding on the parties until it is signed both by . . . the buyer and by [defendant], as the seller.* [Emphasis added.]

Further still, the purchase agreement form supplied to plaintiff did not provide for all of the conditions that plaintiff initially sought (specifically, those pertaining to an escalation clause, boundary survey, or water and septic system inspection). Lastly, the purchase agreement form stated that it would become effective and binding on the parties *only* after both had signed the agreement, and *only* if both had signed before September 1, 2017. The parties never signed a purchase agreement, and so its terms were never accepted. See *Kloian*, 273 Mich App at 453-454. Instead, defendant rejected plaintiff's offer when it indicated that it would not accept plaintiff's offer with the conditions attached and sent the unsigned purchase agreement form, in which defendant specifically outlined the only conditions it was willing to accept from a prospective purchaser. See 1 Williston, Contracts (4th ed), § 5:3, pp 906-908.

The parties very nearly entered into a contract when defendant's representative told Fuller and Mendini-Fuller that plaintiff would be recognized as the purchaser if they were willing to forego the conditions they attached to the completed letter of intent. However, they declined to waive the conditions at that time. By the time Mendini-Fuller indicated that plaintiff was willing to forego all of its previously asserted conditions, defendant had expressed its clear intent not to be bound until both parties had agreed to the terms in its uniform purchase agreement.

Even assuming, arguendo, that the parties intended to participate in an auction with reserve, the very authority that plaintiff relies on, *J & L Investment Co, LLC*, 233 Mich App at 551, held that in an auction with reserve, "an owner may withdraw the property from sale any time before the auctioneer signifies acceptance of the highest bid, i.e., at the 'fall of the hammer.'" This inherently implies that acceptance is not established merely by the receipt of bids or the end of the bidding period. See *id*. Indeed, as articulated in 1 Corbin, Contracts (rev ed), § 4.14, pp 638-640:

> [In] an auction "with reserve . . . ," the seller reserves the right not to sell. The auctioneer is asking for offers. The bids made in response thereto are themselves offers that can be revoked by the bidders prior to an acceptance by the auctioneer. This is true even though the seller or the seller's agent has issued advertisements or made other statements that the article will be sold to the highest bidder, or is offered for sale to the highest bidder. Such statements are usually merely preliminary negotiation, not intended and not reasonably understood to be intended to affect legal relations. *When such is the case, the seller or seller's agent is as free to reject the bids, highest to lowest, as are the bidders to withdraw them. The seller may at any time withdraw the article from sale, if a bid has not already been accepted.* The seller need give no reasons; indeed, all bids are rejected by merely failing to accept them—by doing nothing at all. [Emphasis added.]

Plaintiff also asserts that no formal written agreement signed by the parties was necessary to bind them under contract, because such a writing would merely have been a memorial of the terms' operative facts already existing pursuant to the parties' negotiations and communications. In support of this assertion, plaintiff cites *Mich Broadcasting Co v Shawd*, 352 Mich 453, 456-457; 90 NW2d 451 (1958). However, in that case, our Supreme Court explained:

> Now, there is a clear distinction between a determination in the mind of a party to purchase particular property from another, and which that other is willing to sell, and an actual concluded agreement which comprehends a sale. The disposition to negotiate, or even to trade, is not the same as a trade.

> The decision in the mind or councils of a party to buy may be settled; but unless such party goes further, and in some way deals with the other on the footing of a trade, unless in some form the minds of the parties are brought into a state of union and concurrence in favor of the specific arrangement or transfer, there can be no bargain . . . .

> \* \* \*

> The matter may be put in this way: If the parties indicate that the expected document is to be a mere 'memorial' of operative facts already existing, its nonexistence does not prevent those facts from having their normal legal operation. What that operation is must be determined largely by oral testimony, or by preliminary or only partially complete writings. *If the parties indicate that the expected document is to be the exclusive operative consummation of the*

-9-

*negotiation, their preceding communications will not be operative as offer or acceptance.* This also must be shown largely by oral testimony. [*Id.* (quotation marks and citations omitted; emphasis added).]

Although almost no oral testimony was submitted in this case, the letter of intent form that defendant sent to plaintiff clearly stated, "[P]lease be advised that this letter is not contractually binding on the parties and is only an expression of the basic terms and conditions to be incorporated in a formal written agreement." The document plainly indicated that, even if plaintiff believed that the letter of intent was meant to satisfy the requirement of a formal written agreement, defendant did not intend it to be anything more than a statement of plaintiff's interest in purchasing the properties. Because the parties contemplated a forthcoming written expression of a final agreement before they would be bound in contract, plaintiff cannot circumvent the need for such a writing by stating that it would merely have restated what the parties had already discussed in negotiations. See *Mich Broadcasting Co*, 352 Mich at 456-457.

Indeed, contracts for the sale of land are generally invalid unless the agreement between the parties is reduced to a writing signed by the party against whom enforcement is sought. MCL 566.106; MCL 566.108. The text of MCL 566.108 modifies the rule slightly for sales of land that occur via public auction:

> Every contract for . . . the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the . . . sale is to be made, or by some person thereunto by him lawfully authorized in writing: Provided, [t]hat whenever any lands or interest in lands shall be sold at public auction and the auctioneer or the clerk of the auction at the time of the sale enters in a sale book a memorandum specifying the description and price of the land sold and the name of the purchaser, such memorandum, together with the auction bills, catalog or written or printed notice of sale containing the name of the person on whose account the sale is made and the terms of sale, shall be deemed a memorandum of the contract of sale within the meaning of this section.

Plaintiff suggests that it could invoke the unique language under MCL 566.108 pertaining to public auctions in order to circumvent the need for a signed writing. Plaintiff is mistaken. The language of MCL 566.108 pertaining to public auctions provides only a method to piece together multiple documents—including a memorandum entered in an auctioneer's or auction clerk's "sale book," which plaintiff has never acquired—to create a writing or "memorandum" detailing the material terms of the contract. It does not state that a party seeking enforcement of the agreement may forego the requirement that the party opposing enforcement actually sign some part of the memorandum, regardless of whether the parties have outlined the material terms of what might be an enforceable contract. See *id*. Because the parties have never agreed to the sale of the properties, let alone reduced such an agreement to a signed writing, no valid contract has been created. See *id*.

The trial court was also correct to hold that no meeting of the minds had occurred. "Meeting of the minds" is merely another way of articulating the mutual assent element of a valid contract. *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 548-549; 487 NW2d

499 (1992). "In order to form a valid contract, there must be a meeting of the minds on all the material facts. A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. at 548. As previously discussed, the letter of intent form that defendant sent to plaintiff expressly stated that it was not meant to bind the parties in contract, but was merely a means for plaintiff to express its interest as a potential purchaser of the properties at issue. Plaintiff submitted a bid for the properties, but defendant did not accept the bid, taking issue with some of plaintiff's conditions. Defendant offered to accept plaintiff's bid if plaintiff was willing to forego its conditions, but plaintiff refused. Plaintiff had one more potential opportunity to (at the very least) submit an offer to defendant for the properties when defendant sent out its purchase agreement form. However, the terms of the purchase agreement stated that it would not become binding on the parties unless both had signed it before the close of business on September 1, 2017. Even if plaintiff had submitted another offer for the properties and signed the purchase agreement, which it did not, defendant never signed the purchase agreement. Plaintiff has failed to put forward any evidence that there was a meeting of the minds. Therefore, plaintiff has failed to satisfy the mutual assent element of contract formation. See *id*.

Plaintiff is correct to note that, if defendant had accepted plaintiff's offer and the parties had reduced the agreement to a final, signed writing, the resulting contract would not fail for lack of mutuality of obligation between the parties, see *Vulic v Dep't of Treasury*, 321 Mich App 471, 480-481; 909 NW2d 487 (2017), or for defendant's failure to supply a seller's disclosure under the Seller Disclosure Act, MCL 565.951 *et seq*., see MCL 565.964. Nevertheless, for the reasons stated above, these concessions are immaterial. The trial court did not err when it held that the parties had not established a binding contract for the sale of the properties.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle